IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LINDSAY HOWE,

                    Plaintiff,

        v.

SEARS, ROEBUCK AND CO.,

                    Defendant.

OPINION AND ORDER

12-cv-902-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       Plaintiff Lindsay Howe brings this civil action against her former employer defendant Sears, Roebuck and Co., contending that she was terminated in violation of 42 U.S.C. § 1981 because she reported acts of racial discrimination in the workplace.  Defendant denies that plaintiff engaged in a legally protected activity and asserts that she was terminated for violating a company policy and then lying about it.

       I conclude that plaintiff has adduced evidence that is minimally sufficient to defeat defendant's motion for summary judgment.  Although it is not clear at this stage whether plaintiff can show that she "participated in an investigation," she did take steps to oppose alleged acts of racial discrimination.  It is a close question whether she can show that her supervisor harbored animosity toward her because of her opposition to racial discrimination *and* that he so influenced the actual decision makers that they would not have terminated plaintiff but for his statements.  From the present record, it seems unlikely that plaintiff can

make this showing, but defendant has not demonstrated that she cannot, so I will allow the case to go forward on these claims.

Plaintiff raises another claim that she suffered an adverse employment action when her supervisor reassigned some of her managerial duties to Will Knutson, but she does not develop this argument and she also concedes that Knutson's then-recent promotion might explain the reassignment of duties.  Her failure to develop the argument means that she has forfeited it.  I will grant summary judgment for defendant on this ground.  In addition, I will not consider plaintiff's undeveloped argument that she can prove she was the subject of employment discrimination through the "indirect method of proof," which requires plaintiff to show that she had an adequate employment record and was treated less favorably than other similarly situated employees.

One preliminary matter relates to certain documents produced by defendant during discovery.  Defendant disputes several of plaintiff's proposed findings of fact on the ground that plaintiff has supported them with citations to documents that in defendant's view have not been properly authenticated.  Dft.'s Resp. to plt.'s PFOF ##1, 2, 18, 21, 22, 23, 40, dkt. #48.  The disputed documents were attached as exhibits to a declaration filed by plaintiff's attorney and include such things as defendant's anti-discrimination/anti-harassment company policy, dkt. #40, exh. #1; and emails exchanged among plaintiff's supervisors, dkt. #40, exh. ##4-5.  It appears that plaintiff received these documents from defendant during discovery because the documents pertain to inter-company matters and are Bates-stamped.

It would be unproductive to exclude this sort of evidence from consideration at this

juncture simply because the other side calls it "unauthenticated." Kasten v. Saint-Gobain Performance Plastics Corp., 556 F. Supp. 2d 941, 948 (W.D. Wis. 2008) (defendant's authenticity challenge "disingenuous" in part because defendant had produced documents at issue during discovery). Defendant adds that some of the documents contain inadmissible hearsay, but it did not expand on this point, so I will not consider it.

From the parties' proposed findings of fact, I find that the following facts are undisputed.

## UNDISPUTED FACTS

### A. Plaintiff's Employment with Defendant

Defendant hired plaintiff in June 2004 as a customer service associate in its Janesville, Wisconsin Auto Center store. In March 2007, defendant promoted plaintiff to assistant manager of the Madison West Auto Center in Madison, Wisconsin, a salaried position. Jerry Schultz, the Auto Center manager, was plaintiff's immediate supervisor while she was assistant manager. A store manager and a district manager also supervised plaintiff.

Plaintiff's job was to oversee 10 to 15 automotive technicians. Among other duties, she was expected to educate the technicians on defendant's anti-discrimination policy and to investigate and report violations of this policy to her managers or to the human resources department. Under company policy, all of defendant's employees are directed to "take immediate action" upon learning of violations of the anti-discrimination policy.

### B. Plaintiff's Reports about Discrimination

In January or February 2010, plaintiff overheard one of the technicians she supervised, Will Knutson, making racially discriminatory comments to another technician, Alex Lopez.  (Defendant does not deny that the actual statements amounted to racial discrimination or that it was reasonable for plaintiff to believe they demonstrated actual racial bias.)  Plaintiff reprimanded Knutson and reported the incident to her supervisor, Schultz, and to McKenzie Schneider, a human resources employee at the Madison store. The following day, which was her day off, plaintiff called the Sears human resources hotline to report the incident.  After being told that she would have to report the incident to her local human resources personnel before any further action could take place, plaintiff called the hotline that same day to report the incident again, this time anonymously.  After plaintiff complained to Schultz about Knutson, Schultz reassigned some of plaintiff's supervisory duties to Knutson, who had been promoted recently, and assigned plaintiff other tasks, such as printing signs and completing additional paperwork.

In April or May of 2010 and in July 2010, plaintiff overheard Knutson making more racially discriminatory comments to Lopez.  Plaintiff reported these incidents to Schultz and to Schneider in the human resources department.  At Schneider's direction, plaintiff emailed David Tucker, Schultz's supervisor, to tell him about the comments.  In June 2010, Lopez filed a complaint of discrimination with the Madison Equal Opportunities Commission, in which he complained, among other things, of being subjected to verbal harassment in the form of name calling and derogatory comments about his Mexican heritage.  Dkt. #40-2. In August 2010, defendant asked plaintiff to prepare a written statement about the July

4

2010 incident, which she did.   In September 2010, plaintiff heard Knutson making discriminatory remarks to Lopez again.  She emailed both Tucker and defendant's human resources department about the incident.

### C.  Plaintiff's Violation of Company Policy and Termination

On September 19, 2010, plaintiff allowed Brady Quam, a technician she supervised, to use the Auto Center as a place to  install the tires he had bought for his personal vehicle. In doing so, plaintiff violated defendant's written policy that forbids technicians from working on their own cars in the workplace.  A technician may bring in his own car to be worked on, but the technician must pay for the work, which must be performed by a different technician, and a work order must be generated.  Plaintiff assisted Quam with the installation at a time when  Quam was not "punched in" on his timecard, another violation of company policy.  Later that day, plaintiff created a work order for the installation that listed another technician, Alex Lopez, as the person who had worked on Quam's vehicle. Plaintiff invoiced only one minute of work for the tire installation, a process that typically takes at least 20 minutes.

A customer service associate, Rick Feller, witnessed the incident and reported it. Defendant says Feller reported the incident to Tom Selbo, a manager in loss prevention. Plaintiff disputes this and says that Feller reported the incident only to Schultz (plaintiff's supervisor).

When Schultz heard about the incident, he called defendant's human resources

5

hotline and requested advice on how to proceed.  During that conversation, Schultz stated that plaintiff had created the work order for the installation.

On September 26, 2010, Schultz's supervisor, Tucker, requested a statement from Schultz about what had been reported to him about the tire installation and what he had learned after investigating the incident.  Schultz responded to that request the following day, saying that Feller had informed him of the incident, that he had called the human resources hotline for directions on handling it, had obtained a statement from Feller and turned it over to both the human resources and loss prevention departments, had looked at Quam's car and had seen evidence of work and had  confirmed that plaintiff created the work order in question.  Finally, he scheduled interviews with Quam and plaintiff.

On September 27, 2010, Selbo, a loss prevention manager, interviewed Lopez, who stated that he had not worked on Quam's vehicle and that he had not signed the work order with his name on it.  Another loss prevention department representative, John O'Connell, interviewed Quam on the same day; Quam confirmed that Lopez had not done any work on Quam's vehicle.  Quam admitted that he had violated defendant's policy after  plaintiff had given him permission to do so.   Following the interview, O'Connell wrote Selbo, recommending that plaintiff be terminated and that Quam receive a written final warning. On September 27, 2010, Selbo also interviewed plaintiff.  She admitted having allowed Quam to work on his own vehicle while not punched in on his timecard and she acknowledged that doing so violated two company policies.  In a written statement, she said that she sought assistance from Quam for the work on his vehicle because she did not do

6

that type of work every day and did not want to get hurt and she told Quam to come in during off hours because the store had been busy. In her deposition, plaintiff said that the reasons she gave for seeking Quam's assistance were not true and that she did not know why she had given untrue answers previously.

On October 18, 2010, a human resources consultant, Adrienne Kane, opened a formal investigation into the incident. She reviewed materials from Selbo's investigation and spoke with Tucker. Tucker emailed questions to Schultz regarding plaintiff's knowledge of the policy against technicians working on their own vehicles. On October 21, 2010, Schultz responded by stating that plaintiff was aware of the policy and that a district manager had been terminated for violating the policy. Schultz said that he was not aware of other technicians working on their vehicles in the past. He said they had asked to do so, but he had refused them. Tucker then conducted another interview with plaintiff on October 25, 2010 and confirmed plaintiff's awareness of the policy.

On October 26, 2010, defendant's human resources manager for Auto Centers approved plaintiff's termination. On October 29, 2010, Tucker, Selbo and a human resources employee notified her of the termination. Tucker stated that the termination was based on plaintiff's violation of policies prohibiting technicians from working on their own cars and off the clock and because she created a false work order for the incident. Quam was not terminated for this incident.

D.  Schultz's Implementation of Company Policy

7

On four occasions of which plaintiff was aware, Schultz approved technicians' work on their own vehicles at the Auto Center.  In one instance, in 2009, plaintiff witnessed technician Knutson working on his own vehicle and reported it to Schultz, who responded that she should just let him do it.  In addition, plaintiff witnessed Schultz bringing his own car to the Auto Center for an inspection and having technicians do additional work on it for which he did not prepare an invoice or work order.  Schultz also told her that he had had work done on his car by Auto Center technicians at his home.

OPINION

42 U.S.C. § 1981 authorizes an employee to sue an employer who has retaliated against her for her conduct in opposing illegal discrimination or in assisting someone facing illegal discrimination.  Smith v. Bray, 681 F.3d 888, 895 (7th Cir. 2012 ("Civil Rights Act of 1866 . . . protects the right of all persons 'to make and enforce contracts regardless of race.' 42 U.S.C. § 1981."  In 1991, Congress expanded the reach of the statute, which has now been confirmed to authorize claims for retaliation, "if one person takes action against another for asserting the right to substantial contractual equality provided by § 1981."  Id. at 896 (citing CBOCS West, Inc. v. Humphries, 553 U.S. 442, 457 (2008).  The statute says nothing about the elements of a retaliation case, but the Court of Appeals for the Seventh Circuit has applied the same elements to § 1981 retaliation cases that it applies in cases involving Title VII retaliation:  plaintiffs must establish that (1) they engaged in a legally protected activity; (2) they suffered an adverse employment action and (3) there is

8

a causal connection between the two.  Stephens v. Erickson, 569 F.3d 779, 786 (7th Cir. 2009).

## A. Legally Protected Activities

The starting point is whether plaintiff can satisfy the first prong of her retaliation claim, which requires her to show that she engaged in protected activity.   This question is complicated by the fact that § 1981 does not include language setting forth the types of activities that are protected and the Supreme Court did not consider that issue in CBOCS West, which is the only case in which the Court has considered a § 1981 retaliation claim. In the absence of more guidance, the Court of Appeals for the Seventh Circuit has assumed that the standard for protected conduct for retaliation claims brought under Title VII of the Civil Rights Act applies to § 1981 claims as well.   Davis v. Time Warner Cable of Southeastern Wisconsin, L.P., 651 F.3d 664, 674 (7th Cir. 2011).  Other circuits have made the same assumption.  E.g., Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1278 (11th Cir. 2008); Foley v. University of Houston System, 355 F.3d 333, 340 (5th Cir. 2003).

Under Title VII, a plaintiff must show that she "has opposed any practice made an unlawful employment practice by this subchapter" or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 3000e-3(a).  Neither the Court of Appeals for the Seventh Circuit nor any other court has explained as a matter of statutory construction how this specific language in Title VII can be imported into a statute that Congress enacted many decades

9

earlier.  However, because both the Court of Appeals for the Seventh Circuit and the parties in this case have assumed that Title VII governs the scope of protected conduct under § 1981, I will do the same for the purpose of deciding defendant's motion for summary judgment.

1.  Participation

Plaintiff contends that her participation in the investigation of the alleged discrimination against Lopez constitutes participation "in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  She does not claim to have played any part in an investigation or proceeding conducted by the EEOC; her only "participation" consists of the statements she gave to defendant in the course of its internal investigation of the allegedly discriminatory remarks directed to Lopez.

The Court of Appeals for the Seventh Circuit has interpreted the phrase, "participation . . .under this subchapter," to exclude participation in an employer-led investigation. Hatmaker v. Memorial Medical Center, 619 F.3d 741, 747 (7th Cir. 2010) ("The 'investigation' to which section 2000e-3 refers does not include an investigation by the employer, as distinct from one by an official body authorized to enforce Title VII . . . A purely internal investigation does not involve a 'charge,' or testimony, and neither is it a 'proceeding' or a 'hearing.'").  The court acknowledged the possibility that participation in an internal investigation begun after a charge has been filed with the EEOC might be treated as participation in an official investigation and that other courts had so held, "on the theory . . . that any fruits of a participant's activity are bound to feed into that investigation," but

refused to take a position on that question.  Id. (citing Abbott v. Crown Motor Co., Inc., 348 F.3d 537, 543 (6th Cir. 2003)).  It did note that in Clover v. Total System Services, Inc., 176 F.3d 1346, 1353 (11th Cir. 1999), the court had held that "b]ecause the information the employer gathers as part of its investigation in response to the notice of charge of discrimination will be utilized by the EEOC, it follows that an employee who participates in the employer's process of gathering such information is participating, in some manner, in the EEOC's investigation."  However, it found Clover inapplicable to the case before it, which had involved only an internal investigation.  Hatmaker, 619 F.3d at 747.

The undisputed facts do not disclose whether defendant was responding to an official charge of discrimination in August 2010 when it asked plaintiff to provide a statement about the discriminatory remarks directed to Lopez.  (The parties seem to agree that proceedings before that commission fall within the definition of a "proceeding . . . under this subchapter," 42 U.S.C. § 2000e-3(a), despite the fact that the complaint was not filed directly with the EEOC, so I will proceed under that assumption.)  Thus, even if I proceed on the assumption that the Court of Appeals for the Seventh Circuit would adopt the holding in Clover if presented with a similar situation, I cannot say that plaintiff's participation in defendant's internal investigation is protected conduct.  On the other hand, defendant has not shown that it could prove at trial that the investigation was not based on any knowledge of Lopez's complaint.  This dispute must be left for the jury to resolve.

2.  Opposition

Title VII protects an employee who "has opposed any practice made an unlawful employment practice by [Title VII]."  42 U.S.C. § 2000e-3(a).  Defendant does not deny that plaintiff opposed Knutson's treatment of Lopez but does deny that the opposition was protected.  Citing the "manager rule," it contends that her response was simply part of her job as a manager, whereas "protected activities" are those engaged in outside the scope of a manager's job duties.  Defendant says it makes no sense to give protection under Title VII to a manager whose job duties include investigating incidents of discrimination or harassment and protecting the company from discrimination complaints.  However, courts have generally applied this rule only to managers in human resources departments or those with specific duties related to investigating personnel issues, not to managers in other areas.

Although the Court of Appeals for the Seventh Circuit has not had occasion to consider the rule, the Court of Appeals for the First Circuit did in Collazo v. Bristol-Myers Squibb Manufacturing, Inc., 617 F.3d 39, 49 (1st Cir. 2010).  As the court explained it, an employee does not engage in protected activity under Title VII's retaliation provision unless he steps outside his ordinary employment role of representing the employer and takes actions adverse to the employer.  The court found that Collazo was protected for his activity: he was not a personnel manager warning his company of potential harassment claims but a scientist helping a subordinate fill out a sexual harassment complaint to take to the human resources department.  Id.

Plaintiff was not a human resources employee or part of defendant's human resources

12

department.  Her job duties included taking appropriate action upon learning of harassment and discrimination, but that was a job duty of all defendant's employees, not just managers or supervisors.  The general requirement imposed on her and all other employees to report incidents of discrimination did not bring her within the class of employees to which courts have applied the manager rule.  As the court pointed out in Collazo, 617 F.3d at 49, "an employer cannot be permitted to avoid liability for retaliation under Title VII simply by crafting equal employment policies that require its employees to report unlawful employment practices" and then saying that when they do so they are representing their employer rather than engaging in protected activity.

In any event, plaintiff's activity in this case extended beyond her job duties, which is another reason why the rule would not apply to her.  It was part of her job duties to take appropriate action upon learning of discrimination or harassment to insure that an investigation or corrective action followed.  It follows that her position required her to report the discrimination experienced by Lopez to her supervisor, Schultz.  On the other hand, it was not necessarily part of her job duties to call a human resources employee in addition to Schultz or to make telephone calls to defendant's human resources department.

Finally, the application of the manager rule depends on whether the plaintiff engaged in the activity that may be adverse to the employer.  Hagan v. Echostar Satellite, L.L.C., 529 F.3d 617, 628 (5th Cir. 2008) (to engage in protected activity within meaning of Fair Labor Standards Act, plaintiff must do something outside her job duties "or otherwise make clear to the employer that he was taking a position adverse to the employer"); Claudio-Gotay v. Becton

13

Dickinson Caribe, Ltd., 375 F.3d 99, 102-03 (1st Cir. 2004) (plaintiff's activity protected in part under Fair Labor Standards Act because it "was concerned with protecting [the employer], not asserting rights adverse to [the employer]").  Assuming that it is appropriate to import guidelines from the Fair Labor Standards Act into § 1981, I conclude that a reasonable jury could find that plaintiff made her August 2010 statement during the investigation outlining the incidents of discrimination involving a specific employee (Lopez), to oppose a specific incident by a specific person and not to alert her employer to a general problem.

B.  Causal Connection between Plaintiff's Protected Activity and Termination

The final question is whether plaintiff could prove at trial that her allegedly protected activity had anything to do with her termination.  Stephens, 569 F.3d at 786.  Defendant says plaintiff cannot make this link between her activities and her termination because it terminated her for a legitimate reason:  she violated company policy by allowing a technician to work on his own car and she was dishonest during the investigation of the incident.  Yindee v. CCH Inc., 458 F.3d 599, 602 (7th Cir. 2006).  It is a close question but I conclude that plaintiff has adduced a bare sufficiency of evidence to put into dispute the legitimacy of her termination.

Plaintiff says that she can make the link in one of two ways: either by showing that the decision makers were biased and terminated her in retaliation for her reports of Knutson's comments or that Schultz was biased and influenced the decision makers' decision.  Plaintiff has little to support her first position of bias on the part of the decision makers, that is, the

14

managers and human resources employees who actually terminated her. She says only that defendant has given inconsistent reasons for her termination. It is true that defendant's assertion that it terminated plaintiff for her violation of company policy and because she lied during the investigation conflicts with Tucker's explanation, in which he said nothing about her lying during the investigation. Instead, at his deposition, Tuckerhe testified that the reasons were plaintiff's violation of company policy for allowing an associate to work on his own car, allowing an associate to work "off the clock" and allowing an associate to complete a false timecard. Tucker Dep., dkt. #28, at 110. Even if I assume that the discrepancy between the two explanations undermines defendant's explanation, plaintiff does not say how the discrepancy shows any bias, much less bias growing out of plaintiff's reports of racial discrimination.

The more plausible assertion is that the decision to terminate her was influenced by Schultz, who wanted her terminated and whose statements during his interview persuaded the other decision makers that plaintiff should be let go. In support of this assertion, plaintiff says that Schultz initiated the investigation into the unauthorized work on Quam's car that led to her termination and  lied during the investigation in order to make her look like a worse employee. She says that she "knows" Schultz was motivated by her protected activities because Schultz "acted differently toward her" after she reported the alleged discrimination and because his actions came just a month after her August 2010 report to defendant about the racial discriminatory remarks Knutson made to Lopez.

Her so-called knowledge of Schultz's bias is hardly persuasive, but the uncontested facts

show that he did lie when asked whether employees other than Quam had worked on their own cars at the workplace, which had the result of making plaintiff's infraction look worse than it was.  If at trial, plaintiff can show that the decision makers relied on the facts provided by Schultz, she may be able to show that he was the cause of her discharge.  The Supreme Court has held in  Staub v. Proctor Hospital, 131 S. Ct. 1186 (2011), a case brought under the Uniformed Services Employment and Reemployment Rights Act, that an employer may be liable for a biased employment action if one of its supervisors performed an act motivated by antimilitary animus *intended* to cause an adverse employment action and the act was a proximate cause of the ultimate employment action.  Id. at 1194.  In other words, the employer can be liable even if it undertakes an independent investigation if in doing so it takes into account a biased report from a supervisor intended to cause an adverse employment action "without determining that the adverse action was, aside from the supervisor's recommendation, entirely justified."  Id. at 1193.  The Court of Appeals for the Seventh Circuit has taken a similar position in a Title VII retaliation case that  "[s]ummary judgment generally is improper where the plaintiff can show that an employee with discriminatory animus provided factual information or other input that may have affected the adverse employment action."  Dey v. Colt Construction & Development Co., 28 F.3d 1446, 1459 (7th Cir. 1994).  See also Smith v. Bray, 681 F.3d 888, 897 (7th Cir. 2012) ("[A] final decision maker's reliance on an improperly motivated recommendation from a subordinate may render the corporate employer liable because the subordinate acts as the firm's agent.").  To prevail on this theory, plaintiff must show both that (1) although Schultz was not a decision maker,

16

he influenced her termination through his recommendation, supply of information or other similar act; and (2) he did so because he was biased against her for her opposition to the discrimination against Lopez.

1. Schultz's role in plaintiff's termination

It is disputed whether the investigation that led to her termination began with Schultz's phone call to human resources, as plaintiff alleges, or whether it began when Selbo, the loss prevention manager, received a report directly from the associate who witnessed the unauthorized work on employee Quam's car.  In any event, plaintiff says that Schultz's answers to the  investigator's questions about the unauthorized work, his provision of critical information about plaintiff's knowledge of company policy and his accusation that she created the false work order were a proximate cause of the decision to terminate her.  In response, defendant says that Schultz was merely responding to questions posed by the investigators, who would have discovered the same information in another way, so if Schultz had any influence, it would not have caused her termination.

However, defendant overlooks the fact that Schultz lied in response to one of the questions when he said that he had not heard of other instances when employees had broken the rule about not working on their own cars.  Had Schultz answered truthfully and admitted that he allowed employees to break this rule, his admission might have saved plaintiff from termination, even if she received some other punishment.  After all, defendant did not terminate Quam, the technician that plaintiff allowed to work on his own car after Tucker

17

determined that plaintiff had allowed him to break the rule.  Thus, plaintiff has shown that it was possible that Tucker and the other decision makers were influenced by Schultz alone when he lied to Selbo about allowing employees to work on their own cars at the workplace.

Courts have held that even if decision makers used some of their own judgment and relied on other resources when making their decision, they are not relieved of liability if the plaintiff can show that they would not have made the same decision had it not been for the information provided by a person with discriminatory animus.  <u>Staub</u>, 131 S. Ct. at 1192 ("And it is axiomatic under tort law that the exercise of judgment by the decision maker does not prevent the earlier agent's action (and hence the earlier agent's discriminatory animus) from being the proximate cause of the harm."); <u>Smith</u>, 681 F.3d at 900 (applying <u>Staub</u> to § 1981 retaliation claim and stating that "the key question is whether the non-decision-maker's actions were a 'causal factor,' based on common-law proximate cause principles, in the termination decision.").  <u>Cf.</u> <u>Schandelmeier- Bartels v. Chicago Park District</u>, 634 F.3d 372, 384 (7th Cir. 2011) ("The jury could find that, in fact, the supposed investigation was based *almost* entirely on [the non-decision-maker's] input." (emphasis added)); <u>Lucas v. Chicago Transit Authority</u>, 367 F.3d 714, 730 (7th Cir. 2004) (because non-decision maker was just one witness in  investigation, he merely provided "indirect input" and did not influence adverse employment decision).  A number of courts have referred to this as "cat's-paw" liability after the story of the monkey who convinced a cat to pull hot chestnuts out of the fire; the cat burns his paw and drops the chestnuts, whereupon the monkey swallows them up. <u>Smith</u>, 681 F.3d at 897 n.3.  It simply refers to the fact that an employer (or decision maker)

18

can be held responsible for an act of non-decision maker who "performs an act motivated by a discriminatory bias that is intended to cause, and that does proximately cause, an adverse employment action." Id. (quoting Amini v. City of Minneapolis, 643 F.3d 1068, 1075 (8th Cir. 2011)).

I conclude that plaintiff has made a minimally sufficient showing that a jury could find that Schultz influenced her termination either by initiating an investigation against her or by lying about whether the rules were broken at the Auto Center. The next question is whether Schultz had the requisite intent to harm plaintiff in response to her protected activities.

2. Schultz's retaliatory intent

In addition to showing Schultz's connection to her termination, plaintiff must also adduce evidence that Schultz had an improper motive, that is, a retaliatory intent based on her protected activities. Smith, 681 F.3d at 901. One method of doing this is to "offer circumstantial evidence . . . from which an inference of discriminatory intent might be drawn." Boumehdi v. Plastag Holdings, LLC, 489 F.3d 781, 792 (7th Cir. 2007). See also Hobgood v. Illinois Gaming Board, 731 F.3d 635, 643 (7th Cir. 2013); Smith, 681 F.3d at 901 ("In the absence of an admission, a retaliation plaintiff may also satisfy the causation or motive element by presenting a 'convincing mosaic' of circumstantial evidence that would support the inference that a retaliatory animus was at work.") (internal citations omitted)).

Plaintiff first points to Schultz's decision to call human resources about plaintiff's conduct of allowing technicians to work on their own cars, when defendant had permitted

19

similar conduct on at least four other occasions.  Essentially, plaintiff is arguing that similarly situated employees did not receive the same adverse treatment that she did (Schultz's reporting of the policy violation) and thus that Schultz must have harbored some animosity or bias toward her that he did not carry for others.  Coleman v. Donahoe, 667 F.3d 835, 847 (7th Cir. 2012) ("When the same supervisor treats an otherwise equivalent employee better, one can often reasonably infer that an unlawful animus was at play.").  Similarly, plaintiff says that Schultz lied during defendant's investigation of her when he said he had not witnessed other technicians working on their own cars.

These actions might persuade a jury that defendant intended that plaintiff be disciplined and that his actions were not related to a legitimate managerial concern.  Staub, 131 S. Ct. at 1192 ("Animus and responsibility for the adverse action can both be attributed to the earlier agent . . . if the adverse action is the intended consequence of that agent's discriminatory conduct."); Cf. Simple v. Walgreen Co., 511 F.3d 668, 671 (7th Cir. 2007) (statement by employee who was involved in process leading up to challenged employment action and consulted about appointment may be attributed to defendant employer).

Finally, plaintiff points out that Schultz took these actions shortly after she made her third report of discrimination to him.  Boumehdi, 489 F.3d at 793 (7th Cir. 2007) ("The causal link of a retaliation claim is frequently established by showing that there was a suspiciously short period of time between the employee's complaint and the adverse employment action.").  Plaintiff also says that Schultz showed little interest in investigating Lopez's accusations.   (Plaintiff also notes that Schultz reassigned some of her supervisory

20

duties to Knutson shortly after she complained about Knutson's treatment of Lopez but, as she concedes, this may have been because Knutson received a promotion around the same time.)

To counter these arguments, defendant asserts that plaintiff has offered "nothing more than speculation" and has not pointed to any specific evidence showing Schultz's state of mind.  In fact, plaintiff has cited several specific indications of Schultz's intent: he called human resources immediately after learning that plaintiff had allowed Quam to perform unauthorized work, whereas he had never done so for any other employee; he showed little interest in investigating Knutson's racially discriminatory comments to Lopez; and he lied during the investigation of her when he said he had not seen other employees working on their own cars.

Defendant also says that the proximity in time between plaintiff's reporting of discrimination and Schultz's actions is not enough for a reasonable jury to find retaliatory intent.  Timing is not necessarily sufficient on its own, Kasten v. Saint-Gobain Performance Plastics Corp., 703 F.3d 966, 974 (7th Cir. 2012), and the timing in this case may be explained by plaintiff's bad conduct, which occurred at the same time.  Nevertheless, it is not sufficient to support a grant of summary judgment in defendant's favor.  Finally, defendant says that Schultz's statement that he would handle the issue with Lopez after plaintiff reported it shows that Schultz did not have any discriminatory intent.  It is not clear why defendant thinks this statement is exculpatory.  Schultz might have told this to plaintiff simply to get her to stop reporting the incidents.  In any event, even if this statement is evidence that Schultz

21

lacked retaliatory intent, plaintiff has cited other evidence that would be minimally sufficient to allow a reasonable jury to find that Schultz made his statements about plaintiff because he was offended by her opposition to the discrimination against Lopez.  Therefore, I will deny defendant's motion for summary judgment on all of plaintiff's claims other than those related to the reassignment of some of her job duties to Knutson.

## ORDER

IT IS ORDERED that defendant Sears, Roebuck and Co.'s motion for summary judgment, dkt. #23, is GRANTED as to plaintiff Lindsay Howe's claims stemming from the reassignment of some of her job duties to Knutson.  In all other respects, the motion is DENIED.

Entered this 3d day of January, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

22